UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SARAH D. GODDARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:03-CV-148 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b), Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 19] and defendant's motion for summary judgment. [Doc. 26]. Plaintiff Sarah D. Goddard seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner.

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The medical evidence establishes that the claimant has the "severe" impairments described in the body of this decision.

3. The claimant had no impairment that met or equaled the criteria of any impariment listed in Appendix 1, Subpart P, Regulations No. 4, at least prior to August 19, 1996. Her medically determinable mental impairments imposed prior to August 19, 1996 no more than moderate restriction of activities of daily living, limitation of ability to maintain social functioning, or ability to sustain concentration, persistence, or pace. She had no extended episodes of mental decompensation, and she functioned adequately outside of a highly supportive setting.

4. The claimant's assertions concerning her ability to work are not fully credible for reasons set forth in the body of this decision.

5. The claimant retained from December 5, 1994 to August 19, 1996 the residual functional capacity to perform work involving lifting and carrying as many as 20 pounds occasionally and 10 pounds frequently, and to sit or stand/walk each as many as 6 of 8 hours; however, she could not sit for more than 30 minutes at a time or perform more than occasional stooping or climbing. She also had a limited, but satisfacotry ability to relate to co-workers or supervisors, deal with the public or job stress, maintain concentration and attention, perform detailed instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.

6. The claimant has been unable to perform the requirements of her past relevant work at all times relevant herein.

7. On August 19, 1996, the claimant was a younger individual age 18-44.

8. The claimant has a high school education.

9. The claimant has a semi-skilled work background. However, she lacks transferable job skills.

2

Case 3:03-cv-00148   Document 29   Filed 06/27/05   Page 2 of 9   PageID #: 93

> 10. If the claimant were able to perform a full range of light exertion from December 5, 1994 to August 19, 1996, and considering the vocational factors of her age, education, and work history, 20 C.F.R. §§ 404.1545 and 416.945 and Medical-Vocational Guideline Rule 202.21 would direct a finding of not disabled.
>
> 11. Although the claimant could not perform the full range of light exertion from December 5, 1994 to August 19, 1996, using the above-cited rule as a framework for decisionmaking, there were significant numbers of jobs in the regional and national economies that she could have performed, examples of which are cited in the body of this decision.
>
> 12. Considering the claimant's symptomatic and functional decline by August 19, 1996, she could not perform sustained exertion at any level. Consequently, by such date, she could not make an adjustment to any work that exists in significant numbers in the national economy; a finding of disabled is therefore reached pursuant to Social Security Ruling 96-8p.
>
> 13. The claimant has been under a disability, as defined in the Social Security Act, since August 19, 1996, but not prior thereto (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 489-90).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g). See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). It is immaterial whether the record may also possess

substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (held that in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet, 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

Plaintiff alleges disability beginning December 5, 1994 due to pseudotumor cerebri[1], headaches, impaired vision, anxiety, and depression. She testified that she was first diagnosed with pseudotumor cerebri with resultant headaches in 1983 at the age of 16 and was treated with diuretic medication, with her headaches resolving. (Tr. 67). Also, she stated that her headaches returned in 1994 or 1995 "just a little bit," and testified that her headaches either became worse over the years or were equally severe in 1995 and 1998. (Tr. 67-68, 84).

The ALJ determined that plaintiff had severe impairments, including pseudotumor cerebri, borderline intellectual functioning, and depression, during the relevant period, but concluded that she did not have an impairment or combination of impairments that met or medically equaled a listing impairment. (Tr. 486). He evaluated her residual functional capacity ("RFC") and determined she was able to perform light work with a sit/stand option that required no more than

---

[1] Pseudotumor cerebri is "a condition caused by venous sinus occlusion and cerebral edema associated with a number of pathologic conditions, marked by raised intracranial pressure with normal cerebrospinal fluid, headache, nausea, [and] vomiting." Dorland's Illustrated Medical Dictionary 1486 (29th ed. 2000).

4

occasional stooping or climbing and no more than limited but satisfactory ability to demonstrate reliability, perform detailed instructions, maintain concentration and attention, relate to co-workers or supervisors, deal with the public or job stress, behave in an emotionally stable manner, and relate predictably in social situations. (Tr. 489). Therefore, the issue on appeal is whether the plaintiff is entitled to disability insurance benefits and Supplemental Security Income ("SSI") from December 5, 1994, her alleged onset date, to August 19, 1996, the date her shunt was inserted. (Tr. 398, 486).

   Plaintiff disputes the ALJ's finding that she did not become disabled until August 19, 1996, arguing that the record supports her claims of severe headaches before that date, and argues that the ALJ erred in rejecting Dr. Wheatley's April 1998 opinion that plaintiff was disabled by her headaches. (Tr. 425-28). However, the Commissioner insists that the issue is not the onset date of plaintiff's headaches, or even when they became "severe," but rather, when they became disabling. She maintains that the ALJ reasonably found that plaintiff became disabled when plaintiff's physicians inserted a shunt on August 19, 1996 to alleviate her headaches and optic nerve swelling. Specifically, in his January 1995 initial assessment, Dr. Wheatley, plaintiff's treating physician, noted that plaintiff said her headaches were just "moderate in severity" and "sporadic" between 1983 and a few weeks earlier, when their frequency increased (Tr. 190, 486); Dr. Summers observed that plaintiff first complained of persistent headaches in 1983, but that "[s]he tolerated them [] reasonably well until 1996 when she required a spinoperitoneal shunt placement as treatment" (Tr. 461, 487); Dr. Hildebrandt, plaintiff's treating ophthalmologist, reported that she stated in December 1995 that she was "doing well," and when she saw him two months later, she denied any problems

5

since her last visit (Tr. 373); and Dr. Natelson, the surgeon who inserted plaintiff's shunt, reported in July 1996 that plaintiff "feels well at the moment without any symptoms." (Tr. 400). Furthermore, the Commissioner notes that plaintiff herself testified that her headaches returned in 1994 or 1995, but "just a little bit" (Tr. 67) and that she reported in April 1995 that her pain was severe "when not treated" with medication or a spinal tap. (Tr. 150).

With respect to the ALJ's rejection of Dr. Wheatley's opinion of disability, the Commissioner maintains that the ALJ reasonably found Dr. Wheatley's opinion of disability inconsistent with his treatment notes, as well as other record evidence. (Tr. 486-87). She points out that the ALJ observed that it was not until April 1998 that Dr. Wheatley opined that plaintiff's headaches had been "incapacitating" and "refractory headaches for years," and that plaintiff was disabled by her headaches. (Tr. 425-27). Furthermore, she notes that Dr. Wheatley's opinion of disability was inconsistent with his contemporaneous report that plaintiff stated her headaches were just "moderate in severity" and "sporadic," although they were more frequent over the previous few weeks (Tr. 190, 486), as well as his remarks in March 1995 that plaintiff was "doing well" with "no new focality." (Tr. 188). Also, the Commissioner notes that Dr. Wheatley's opinion of disability is also inconsistent with Dr. Summers' observation that plaintiff initially complained of persistent headaches in 1983, but that "[s]he tolerated them [] reasonably well until 1996 when she required a spinoperitoneal shunt placement as treatment." (Tr. 461, 487).

I find the Commissioner's argument persuasive that substantial evidence supports the ALJ's decision that plaintiff was not disabled before August 19, 1996. <u>Boyes v. Secretary of Health and Human Services,</u> 46 F.3d 510, 512 (6th Cir. 1994) (plaintiff has the burden of proving

6

her entitlement to benefits). Furthermore, as the Commissioner points out, the issue is whether substantial evidence supports the ALJ's finding that plaintiff was not disabled before August 19, 1996, not whether substantial evidence supported an alternative finding. Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989) (the Commissioner's determination of onset date will be upheld if supported by substantial evidence, even if the records arguably support a different date); Miller v. Secretary of Health and Human Services., 843 F.2d 221 (6th Cir. 1988).

Although a treating physician's opinion is generally afforded substantial weight, it may be discounted if good cause is shown. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In addition, controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is "not inconsistent" with the other substantial evidence of record. Cutlip v. Secretary of Health and Human Services, 25 F.3d 284, 287 (6th Cir. 1994).

Similarly, I find the Commissioner's argument persuasive that the ALJ properly declined to afford Dr. Wheatley's opinion great weight because his opinion was inconsistent with his own treatment notes and inconsistent with other record evidence. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (in weighing medical source opinions, ALJ considers extent to which opinions are consistent with other record evidence). As the Commissioner properly points out, the evidence provides substantial support for the ALJ's conclusion that, although plaintiff might have experienced headaches before August 19, 1996, she was not disabled by them before that date.

Next, plaintiff challenges the ALJ's credibility determination, arguing that she discontinued her Norpramine because it caused weight gain that could aggravate her condition and

7

arguing that the reports of her drug and alcohol abuse were inaccurate. However, the Commissioner asserts that the ALJ properly considered plaintiff's noncompliance with her prescribed treatment regimen in assessing her credibility. Dr. Wheatley observed on at least one occasion that plaintiff had not lost weight as instructed (Tr. 285), and plaintiff told her mental health professionals in early 1996 that she was not taking her medication as prescribed. (Tr. 310-12). Moreover, the Commissioner insists that plaintiff's assertion that reports of her drug and alcohol abuse were inaccurate is unpersuasive because of the multiple sources indicating such abuse. (Tr. 221, 245, 320). Therefore, the Commissioner maintains that the ALJ reasonably concluded that plaintiff's subjective complaints were not fully credible and that she could perform a range of light work until August 1996.

It is within the province of the ALJ to resolve conflicts in the evidence and decide questions of credibility. See Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993). The ALJ, as the finder of fact, is required to weigh the evidence, resolve conflicts in the record, and determine the case accordingly. Bradley v. Secretary of Health and Human Services, 862 F.2d 1224, 1227-28 (6th Cir. 1988). The ALJ stated that he found plaintiff's subjective complaints to be less than fully credible. (Tr. 487-88). I find no error with that determination and find that the ALJ reasonably relied on the record evidence to conclude that the claimant was not disabled during the relevant period of time. Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 247 (6th Cir. 1987) (ALJ's function is to determine what medical restrictions a claimant is under and how such restrictions affect her RFC.).

8

Lastly, plaintiff argues that the ALJ erred in failing to address the testimony of her mother and argues that a remand for an award of benefits is appropriate because the proof of disability is strong and the evidence to the contrary is lacking. However, the Commissioner maintains that the testimony of plaintiff's mother corroborated plaintiff's testimony, and thus, the ALJ did not err by failing to specifically address plaintiff's mother's testimony, citing Herron v. Shalala, 19 F.3d 329, 337 (7th Cir. 1994). Furthermore, the Commissioner insists that the record supports the ALJ's conclusion that plaintiff's headaches did not reach a disabling level of severity until August 1996, and thus, a remand is not warranted.

I agree with the Commissioner that plaintiff's mother's testimony was cumulative and that the record as discussed herein does not support a remand for an award of benefits.

Based upon the foregoing, it is hereby **RECOMMENDED** that the plaintiff's motion for summary judgment [Doc. 19] be **DENIED** and that the defendant's motion for summary judgment [Doc. 26] be **GRANTED**.[2]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).